IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**TERRANCE MCNAUGHTON**                                                                 **PLAINTIFF**

**VERSUS**                                          **CIVIL ACTION NO. 1:22-cv-00342-RPM**

**MIKE EZELL, et al.**                                                                    **DEFENDANTS**

## ORDER GRANTING MOTION [42] FOR SUMMARY JUDGMENT

*Pro se* Plaintiff Terrance McNaughton is an inmate in the custody of the Mississippi Department of Corrections ("MDOC") currently housed at the Wilkinson County Correctional Facility in Woodville, Mississippi. [44] at 1. When he filed his Complaint [1] under 42 U.S.C. § 1983, McNaughton was a pretrial detainee being housed at the Jackson County Adult Detention Center ("JCADC") in Pascagoula, Mississippi. [1] at 3-4. McNaughton names former Sheriff Mike Ezell and Jackson County, Mississippi, as Defendants, [1] at 2; [18] at 1, and he is proceeding *in forma pauperis*, [8] at 1-3.

On October 17, 2023, the Court held an omnibus hearing to allow McNaughton to clarify his claims.[1] After the omnibus hearing, Defendants filed a Motion [36] for Partial Summary Judgment based on McNaughton's failure to exhaust administrative remedies with respect to some of his claims. The Court granted that Motion [36] and dismissed without prejudice McNaughton's claims about (1) standing water on the floors, (2) flies in the restrooms, (3) a lack of hot water, (4) non-functioning toilets and showers, (5) lack of sunshine and fresh air, (6) contaminated drinking water, and (7) dirty shower curtains. [38] at 8-9. On October 28, 2024, Defendants filed another Motion [42] for Summary Judgment on the merits of McNaughton's remaining claims—regarding

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a "more definite statement") (quotation omitted), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

black mold and dysfunctional air conditioning at JCADC. McNaughton has filed no response over the past five months. For the following reasons, the Court finds that Defendants' Motion [42] for Summary Judgment should be granted, that McNaughton's remaining claims against them should be dismissed with prejudice, and that this case should be closed.

## I.   BACKGROUND

A complete summary of McNaughton's allegations was provided in the Court's Order [38] Granting Motion for Partial Summary Judgment, and that recitation is incorporated herein by reference. [38] at 2-3. Only McNaughton's complaints about black mold and dysfunctional air conditioning at JCADC remain.

McNaughton was housed at JCADC from May 2021 through June 2023. [35] at 8. McNaughton testified that "there's . . . black mold everywhere" in the facility, [35] at 39, including the "rooms" and the "showers," [1] at 4. McNaughton complains that this condition "messed with [his] breathing," "caused [his] eyes to be irritated and itchy and red," and "made his vision a little blurry." [35] at 39. He also complains that this condition caused him to suffer "bad migraines," [14] at 1, along with cramping, diarrhea, and bloody stool, [36-1] at 5. McNaughton claims that he saw medical staff for these conditions, but they provided no diagnosis or treatment. [35] at 40. McNaughton also claims that his custodians provided cleaning supplies, including "spray," a mop, and a broom, but these amenities were not effective to combat the mold. *Id*. at 41; *see also* [36-1] at 5-6.

The summary-judgment evidence reveals that McNaughton first filed a maintenance request about the "clumps" of "black mold" in the showers on December 22, 2022—the day after he filed this lawsuit. [42-3] at 1. In response, a person named T. Cothran advised that there was "a

2

crew in place to clean, disinfect, and resurface the showers." *Id*. He asked McNaughton to "be patient," as this task would "take time to complete" in such "a large facility." *Id*.

McNaughton next testified that "there's no air conditioner" at JCADC. [35] at 44. He complained that he could "barely . . . breathe" during the summer months because "it [was] so hot" in his living quarters. *Id*. at 45. McNaughton concedes that his custodians would sometimes provide "fans [in the] zones" if the inmates complained enough about the heat. *Id*. at 44. He also concedes that he suffered no physical injuries as a result of the lack of air conditioning, though he once "got delusional" and "started seeing stuff" because he got "so hot." *Id*. at 45-46.

On February 16, 2023, McNaughton filed a maintenance request about the "air in [his] room," which he complained was not "working at all." [42-3] at 2. He expressed concern that there was "something weird . . . in the air" because he was "delusional," "moving slow," and "seeing spots." *Id*. T. Cothran replied that McNaughton's custodians had "checked [the] air" and determined that "everything [was] fine," as "fresh [air circulates] from outside of the building." *Id*. McNaughton filed two more requests about the air conditioning on February 23, 2023, complaining again that the air conditioning was "broken." *Id*. at 3. T. Cothran advised that the maintenance staff was "waiting for parts to come in." *Id*.

McNaughton sued former Sheriff Ezell because he was "over the jail . . . and . . . should be responsible [for] . . . taking care of his inmates," though he never spoke with Sheriff Ezell personally. [35] at 51-52. McNaughton sued Jackson County for essentially the same reasons. *Id*. at 52. He seeks an unspecified measure of "actual [and] punitive damages" to compensate for these alleged constitutional violations. [1] at 5; *see also* [35] at 50 ("I would like compensation or something for having to live like that for as long as I had to live like that."). He also asks the Court

3

to order that JCADC "correct" the problems identified here. [1] at 5; *see also* [35] at 50-51.

## II.     STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)). "Summary judgment is appropriate, therefore, if the nonmovant fails to set forth specific facts, by affidavits or otherwise,

4

to show there is a genuine issue for trial." *Topalian*, 954 F.2d at 1132.

### III.   DISCUSSION

Defendants are entitled to judgment as a matter of law on McNaughton's remaining claims against them. McNaughton has offered no evidence to establish his claim of municipal liability against Jackson County, nor has he proven (or even alleged) that former Sheriff Ezell was personally involved in any violation of his constitutional rights. McNaughton's remaining claims against Jackson County and former Sheriff Ezell must be dismissed with prejudice.

#### A.  Jackson County

"Municipalities cannot be held liable under Section 1983 on a theory of respondeat superior, but [they] may be liable under Section 1983 'when [the] execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Showers v. City of Bay St. Louis*, No. 1:19-cv-00323-TBM-RPM, 2022 WL 989149, at *7 (S.D. Miss. Mar. 31, 2022) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). That is, "municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted). These three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Id*. "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id*.

5

"The Fifth Circuit has identified two forms that 'official policy' may take." *Showers*, 2022 WL 989149, at *8. "First, a plaintiff may point to a policy statement formally announced by an official policymaker." *Id*. (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). "In the alternative, a plaintiff may demonstrate a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Id*. (quoting *Webster*, 735 F.2d at 841).

McNaughton testified that he sued Jackson County because it failed to exercise responsibility for the care of inmates housed at JCADC. [35] at 52. But McNaughton has offered no "summary-judgment evidence identifying any official policy that caused his constitutional violations," nor has he "identif[ied] a custom amounting to official-municipal policy." *Amerson v. Pike Cnty., Miss.*, No. 3:09-cv-00053-DPJ-FKB, 2013 WL 53900, at *3 (S.D. Miss. Jan. 3, 2013) (granting summary judgment for Pike County under these circumstances). Instead, his allegations against Jackson County "are based on the impermissible theories of respondeat superior and vicarious liability." *See Johnson v. City of Gulfport, Harrison Cnty., Miss.*, No. 1:16-cv-00139-HSO-JCG, 2017 WL 9511030, at *4 (S.D. Miss. Aug. 3, 2017) (emphasis omitted) (rejecting municipal-liability claim based on the city's responsibility for operating the jail), *report and recommendation adopted by* 2017 WL 3671168, at *3 (S.D. Miss. Aug. 25, 2017); *see also Vanslyke v. Pearl River Cnty.*, No. 1:17-cv-00164-LG-RHW, 2019 WL 4315026, at *4 (S.D. Miss. July 29, 2019) (finding "claims . . . that the . . . County owns the jail" could not support municipal liability), *report and recommendation adopted by* 2019 WL 4308537, at *1 (S.D. Miss. Sept. 11, 2019).

McNaughton's remaining claims against Jackson County must be dismissed with prejudice. *E.g.*, *Mills v. Adams Cnty., Miss.*, No. 5:18-cv-00024-KS-MTP, 2019 WL 4794744, at *3-4 (S.D. Miss. July 17, 2019) (recommending that claims against Adams County be dismissed with prejudice at the summary-judgment stage where the plaintiff had "not alleged facts necessary to demonstrate a claim for municipal liability"), *report and recommendation adopted by* 2019 WL 4783108, at *1 (S.D. Miss. Sept. 30, 2019); *Tuskan v. Jackson Cnty., Miss.*, No. 1:13-cv-00356-HSO-RHW, 2016 WL 7647693, at *8 (S.D. Miss. June 24, 2016) (dismissing claims against Jackson County with prejudice for the same reason).

### B. Mike Ezell

#### i. *Official Capacity*

Likewise, Defendants argue that any official-capacity claims against former Sheriff Ezell must be dismissed because McNaughton has failed to "establish a claim for municipal liability" under § 1983. [43] at 12-13. An official-capacity claim against former Sheriff Ezell amounts to a claim against Jackson County. *See Eason v. Frye*, 972 F. Supp. 2d 935, 943 (S.D. Miss. 2013). Thus, McNaughton's official-capacity claims against former Sheriff Ezell merely duplicate his claims against Jackson County and should be dismissed for the reasons articulated above. *E.g.*, *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Showers*, 2022 WL 989149, at *9; *Amerson*, 2013 WL 53900, at *2.

#### ii. *Individual Capacity*

Defendants argue that former Sheriff Ezell is entitled to qualified immunity from McNaughton's individual-capacity claims against him. [43] at 4-6, 11-12. Because McNaughton "has failed to state or otherwise to establish a claim" under § 1983, the Court need not reach the

qualified-immunity question. *See Bevill v. Epps*, No. 3:12-cv-00537-CWR-FKB, 2014 WL 1050439, at *3 (S.D. Miss. Mar. 14, 2014) (quoting *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1995)).

McNaughton sued former Sheriff Ezell "because he [was] over the jail, and he should [have] be[en] responsible [for] . . . taking care of his inmates." [35] at 52. But "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "However, a supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id*. at 304. A supervisory official may also be liable if he "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id*. (quotations omitted).

"The sheriff's general responsibility for supervising the operations of his department is insufficient to establish personal involvement." *Ellis v. Packnett*, No. 5:06-cv-00033-DCB-JMR, 2007 WL 2688540, at *8 (S.D. Miss. Sept. 10, 2007). McNaughton has described no wrongdoing of former Sheriff Ezell's that might have caused the alleged constitutional violations. Nor has McNaughton identified any policy of former Sheriff Ezell's that might have caused the alleged constitutional violations. So McNaughton cannot maintain his individual-capacity claims against former Sheriff Ezell, and they should also be dismissed with prejudice. *See McCloud v. Allison*, No. 1:08-cv-00581-RHW, 2009 WL 3214797, at *3 (S.D. Miss. Sept. 30, 2009) (awarding

summary judgment to the sheriff where the plaintiff failed to allege "any personal involvement by [the sheriff] . . . , [or] any causal connection between any wrongdoing by [the sheriff] and the alleged constitutional deprivation").

Assuming *arguendo* that former Sheriff Ezell had been personally involved, McNaughton has still failed to establish a constitutional violation. "The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). "[A] pretrial detainee's due process rights are said to be at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* (quotation omitted). When evaluating conditions-of-confinement claims, like the ones at issue here, the operative standard is this: "[A] pretrial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose." *Id*. at 640. But the Constitution is not concerned with "a *de minimis* level of imposition" on pretrial detainees. *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996). "The Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." *McAllister v. Strain*, No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009).

McNaughton's claim that "there's . . . black mold everywhere" in the facility fails to rise to the level of a constitutional violation. *See* [35] at 39. McNaughton claims that he suffered breathing and gastrointestinal issues as a result of the black mold, [35] at 39; [36-1] at 5, but "[t]here are no medical records" connecting McNaughton's symptoms with the presence of black mold or showing that he suffered any lasting harm related to this alleged condition, *see Eaton v. Magee*, No. 2:10-cv-00112-MTP, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012). Moreover,

9

McNaughton concedes that the detainees received cleaning supplies periodically, [35] at 41, so he "has failed to show that [this condition] amount[s] to punishment and [is] not reasonably related to a legitimate governmental purpose," *see Eaton*, 2012 WL 245939, at *5 (dismissing conditions-of-confinement claim about the presence of black mold at the Forrest County Adult Detention Center); *see also Moore v. Stevens*, No. 2:17-cv-00146-KS-MTP, 2019 WL 2063524, at *3 (S.D. Miss. Apr. 12, 2019) (recommending dismissal of black-mold claim where the plaintiff did not respond to the motion for summary judgment and failed to demonstrate "how [the] 'black mold' functioned as a punishment or was intended to be punitive"), *report and recommendation adopted by* 2019 WL 2062515, at *1 (S.D. Miss. May 9, 2019).

Likewise, McNaughton has failed to establish a constitutional violation based on the lack of air conditioning at JCADC. He "does not allege that JCADC housed him in a cell without air conditioning as a form of punishment," nor does he "allege that he was injured in any way as a result of this condition." *See Teague v. Arnold*, No. 1:22-cv-00184-HSO-BWR, 2023 WL 5166386, at *8 (S.D. Miss. June 16, 2023), *report and recommendation adopted by* 2023 WL 4587627, at *2-3 (S.D. Miss. July 18, 2023); *see also Johnson v. Tex. Bd. of Crim. Justice*, 281 F. App'x 319, 321 (5th Cir. 2008) ("While Johnson alleged that the temperatures were sometimes uncomfortably hot, he did not allege that he suffered from any heat-related injuries despite being subjected to these conditions numerous times; this is not sufficient to state a constitutional claim."). McNaughton also testified that his custodians would sometimes provide "fans [in the] zones" if the inmates complained enough about the heat. [35] at 44. "The fact that temperatures are uncomfortable cannot alone support a finding" that Defendants violated McNaughton's constitutional rights. *See Ventry v. Gusman*, No. 11-2989, 2012 WL 1405862, at *7 (E.D. La. Mar.

29, 2012), *report and recommendation adopted by* 2012 WL 1398626, at *1 (E.D. La. Apr. 20, 2012).

McNaughton "is under the misconception that he is entitled to a 'comfortable prison.'" *Causey v. Allison*, No. 1:08-cv-00155-RHW, 2008 WL 4191746, at *2 (S.D. Miss. Sept. 9, 2008) (quoting *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)). He is not. Having failed to demonstrate a constitutional violation, McNaughton's individual-capacity claims against former Sheriff Ezell fail for this reason too.

\* \* \*

Any claim for monetary damages fails for the reasons articulated above. But McNaughton's request for injunctive relief—*i.e.*, a Court order that Jackson County "correct" these problems, [1] at 5; *see also* [35] at 50-51—also fails. His transfer from JCADC (where the alleged violations occurred) "to a different correctional facility renders his request for injunctive relief moot." *See Carter v. Harrison Cnty. Adult Det. Ctr.*, No. 1:20-cv-00362-TBM-RPM, 2021 WL 1323398, at *1 (S.D. Miss. Apr. 8, 2021). "The Court further finds that any suggestion of relief based on the possibility of transfer back to . . . [JCADC] is too speculative to warrant relief." *See id*. (quotation omitted). The evidence before the Court indicates that McNaughton is now housed in MDOC custody, and nothing suggests his probable return to JCADC. The Court cannot provide injunctive relief under these circumstances. *See id*.

### IV.   CONCLUSION

The Court must consider the evidence against the only Defendants that McNaughton has elected to sue. *See Amerson*, 2013 WL 53900, at *5. No evidence of municipal liability or personal involvement being offered, Defendants' Motion [42] for Summary Judgment must be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [42] for Summary Judgment filed by Defendants Mike Ezell and Jackson County, Mississippi, is **GRANTED**. Plaintiff Terrence McNaughton's claims against them regarding black mold and the lack of functional air conditioning at the Jackson County Adult Detention Center are **DISMISSED WITH PREJUDICE.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that this case is **CLOSED**. A separate final judgment will be entered under Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED,** this 3rd day of April, 2025.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE